UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

TODD L.,

                     Plaintiff,

          v.

COMMISSIONER OF SOCIAL SECURITY,

                 Defendant.
_____

**DECISION AND ORDER**

6:20-CV-06997 EAW

## <u>INTRODUCTION</u>

Represented by counsel, Plaintiff Todd L. ("Plaintiff") brings this action pursuant to Title XVI of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner," or "Defendant") denying his application for supplemental security income ("SSI"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Dkt. 16; Dkt. 17), and Plaintiff's reply (Dkt. 18). For the reasons discussed below, Plaintiff's motion (Dkt. 16) is granted to the extent that the matter is remanded for further administrative proceedings, and the Commissioner's motion (Dkt. 17) is denied.

## BACKGROUND

Plaintiff protectively filed his application for SSI on October 27, 2017. (Dkt. 15 at 22, 172-79).[1] In his application, Plaintiff alleged disability beginning November 1, 2014, due to the following impairments: traumatic brain injury, arthritis in right shoulder, severe headaches, high blood pressure, high cholesterol, and water on the brain. (*Id.* at 22, 78, 172). Plaintiff's application was initially denied on April 4, 2018. (*Id.* at 22, 94). A video hearing was held before administrative law judge ("ALJ") Kathleen Scully-Hayes on May 23, 2019. (*Id.* at 22, 39-76). Plaintiff appeared in Horseheads, New York, and the ALJ presided over the hearing from Baltimore, Maryland. (*Id*. at 22). At the hearing, Plaintiff amended his onset date to February 24, 2017. (*Id.* at 22, 65-67). On September 4, 2019, the ALJ issued an unfavorable decision. (*Id.* at 22-33). Plaintiff requested Appeals Council review; his request was denied on September 24, 2020, making the ALJ's determination the Commissioner's final decision. (*Id.* at 5-11). This action followed.

## LEGAL STANDARD

### I.   District Court Review

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C.

---

[1]   When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

§ 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence). However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II.   <u>Disability Determination</u>

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 416.920(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id*. § 416.920(c). If the claimant does not have a severe impairment or

combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does have at least one severe impairment, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. § 416.920(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (*id*. § 416.909), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id*. § 416.920(e).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work. *Id*. § 416.920(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. § 416.920(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted).

## **DISCUSSION**

## I.   **The ALJ's Decision**

In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. § 416.920. At step one, the ALJ determined

that Plaintiff had not engaged in substantial gainful work activity since October 27, 2017, the application date.  (Dkt. 15 at 24).

At step two, the ALJ found that Plaintiff suffered from the severe impairments of: traumatic brain injury ("TBI"), headaches, neurocognitive disorder, anxiety, depression, and substance abuse.  (*Id.*).  The ALJ further found that Plaintiff's medically determinable impairments of cervical and lumbar degenerative disc disease were non-severe.  (*Id*. at 25).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing.  (*Id*. at 26).  The ALJ particularly considered the criteria of Listings 11.18, 12.02, 12.04, 12.06, and Plaintiff's obesity in reaching her conclusion.  (*Id.* at 26-27).

Before proceeding to step four, the ALJ determined that Plaintiff retained the RFC to perform work at all exertional levels, with the additional limitations that Plaintiff:

> must avoid hazards, including heights and moving machinery.  He can understand, remember, and carry out simple, routine, and repetitive instructions.  [Plaintiff] requires low stress jobs, defined as no production rate pace work, only occasional changes in the job setting, and only occasional decision-making responsibilities.

(*Id.* at 27).  At step four, the ALJ found that Plaintiff was able to perform past relevant work as a kitchen helper.  (*Id.* at 31).

In making alternative step five findings, the ALJ relied on the testimony of a vocational expert ("VE") to conclude that, considering Plaintiff's age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that Plaintiff could perform, including the representative occupations of linen room attendant, day worker, and garment sorter.  (*Id.* at 32-33).  Accordingly, the ALJ

found that Plaintiff was not disabled as defined in the Act since October 27, 2017, the application date.  (*Id.* at 33).

## II.   **Remand of this Matter for Further Proceedings is Necessary**

Plaintiff asks the Court to remand this matter to the Commissioner, arguing that the ALJ: (1) failed to consider the medical opinion of Nurse Breckinridge; (2) improperly assessed the other medical opinion evidence of record; (3) failed to properly assess Plaintiff's social limitations; (4) failed to assess the frequency, duration, and severity of Plaintiff's headaches; (5) improperly concluded that Plaintiff could perform his past relevant work; and (6) improperly concluded that there were jobs that exist in sufficient numbers in the national economy that Plaintiff is capable of performing.   As further explained below, because the ALJ did not properly assess the medical opinion evidence in crafting Plaintiff's RFC, remand for further proceedings is necessary.

### A.     **Assessment of Medical Evidence and Determination of RFC**

Specifically, Plaintiff argues that the ALJ failed to properly assess the opinion evidence in the record in determining his RFC, particularly with respect to social limitations.  In response, the Commissioner argues that the ALJ thoroughly examined the medical evidence and opinions offered and properly evaluated them in developing the RFC. The Court agrees with Plaintiff.

"In making a residual functional capacity determination, the ALJ must consider a claimant's physical abilities, mental abilities, symptomology, including pain and other limitations which could interfere with work activities on a regular and continuing basis." *Pardee v. Astrue*, 631 F. Supp. 2d 200, 210 (N.D.N.Y. 2009) (citing 20 C.F.R.

§ 404.1545(a)).  The ALJ is tasked with "weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013).  An ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in his decision." *Id.*  However, an ALJ is not a medical professional, and "is not qualified to assess a claimant's RFC on the basis of bare medical findings." *Ortiz v. Colvin*, 298 F. Supp. 3d 581, 586 (W.D.N.Y. 2018) (quotation omitted).  Thus, generally, "an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence." *Dennis v. Colvin*, 195 F. Supp. 3d 469, 474 (W.D.N.Y. 2016) (quotation and citation omitted).  "Where, however, the record contains sufficient evidence from which an ALJ can assess the claimant's residual functional capacity, a medical source statement or formal medical opinion is not necessarily required." *Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8 (2d Cir. 2017) (quotations, alteration, and citations omitted).  In particular, a formal medical opinion is not necessary "when the record is clear and contains some useful assessment of the claimant's limitations from a medical source." *Spivey v. Comm'r of Soc. Sec.*, 338 F. Supp. 3d 122, 127 (W.D.N.Y. 2018) (quotation omitted).

The Commissioner's regulations relating to the evaluation of medical evidence were amended for disability claims filed after March 27, 2017.  *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 2017 WL 168819, 82 Fed. Reg. 5844-01, at *5844 (Jan. 18, 2017).  Because Plaintiff's claim was filed on October 27, 2017, the new regulations, codified at 20 C.F.R. § 416.920c, apply.

- 7 -

Pursuant to the new regulations, the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. § 416.920c(a).  Further, when a medical source provides one or more medical opinions, the Commissioner will consider those medical opinions from that medical source together using the factors listed in paragraphs (c)(1) through (c)(5) of the applicable sections.  *Id.*  Those factors include: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length of the treatment relationship, the frequency of examinations, purpose and extent of the treatment relationship, and the examining relationship; (4) specialization; and (5) any other factors that "tend to support or contradict a medical opinion or prior administrative medical finding."  *Id*. at § 416.920c(c).

When evaluating the persuasiveness of a medical opinion, the most important factors are supportability and consistency.  *Id*. at § 416.920c(a).  With respect to "supportability," the new regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be."  *Id.* at § 416.920c(c)(1).  With respect to "consistency," the new regulations prove that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more

persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.*
at § 416.920c(c)(2).

The ALJ must articulate his consideration of the medical opinion evidence,
including how persuasive he finds the medical opinions in the case record. *Id.* at
§ 416.920c(b). "Although the new regulations eliminate the perceived hierarchy of
medical sources, deference to specific medical opinions, and assigning 'weight' to a
medical opinion, the ALJ must still articulate how [he or she] considered the medical
opinions and how persuasive [he or she] find[s] all of the medical opinions." *Andrew G.
v. Comm'r of Soc. Sec.*, No. 3:19-CV-0942 (ML), 2020 WL 5848776, at \*5 (N.D.N.Y. Oct.
1, 2020) (quotations and citation omitted). Specifically, the ALJ must explain how he
considered the "supportability" and "consistency" factors for a medical source's opinion.
20 C.F.R. § 416.920c(b)(2). The ALJ may—but is not required to—explain how she
considered the remaining factors. *Id*.

Here, Plaintiff argues that the ALJ failed to account for Plaintiff's limitations in
interacting with others in determining his RFC. In connection with her step three analysis,
the ALJ concluded that Plaintiff has a "moderate" limitation in interacting with others, but
indicated that Plaintiff testified at the hearing that he "did not have problems interacting
with others." (Dkt. 15 at 26).

The medical opinion evidence of record was also consistent with a finding that
Plaintiff had at least moderate limitations in interacting with others. For example, Jeff
Barlow, Ph.D., administered detailed cognitive testing arising from Plaintiff's complaints
of memory loss over four visits between November 2017 and February of 2018. (*Id.* at

488-494).    When asked to describe difficulties Plaintiff would face at work, especially

regarding relationships with supervisors and peers, Dr. Barlow indicated, "[Plaintiff]

would have difficulty understanding verbal instructions.    He would have difficulty in

supervisory relationships." (*Id.* at 489).    In assessing Plaintiff's cognitive test results, Dr.

Barlow noted that the tests were "rather hard to interpret," noting that he did not have a

"good mental health history on [Plaintiff] with which to put these scores in context." (*Id.*

at 493-94).    Dr. Barlow concluded that Plaintiff's "cognitive testing, although generally in

the lower than average range would not rule out his ability to work at entry level, nonverbal,

noncustomer related jobs, such as line manufacturing." (*Id.* at 494).    He continued, "[i]f

his mental health testing is to be believed, he would be prone to frequent absences, unable

to work with others or supervisors, and may be disruptive in the work place." (*Id.*).    The

ALJ found Dr. Barlow's opinion persuasive. (*Id.* at 30).    She concluded that the opinions

were supported by the results of the assessment and consistent with the overall evidence of

record. (*Id*).    But she determined that greater limitations than those indicated by Dr. Barlow

were not warranted in light of Plaintiff's conservative mental health treatment and she

ultimately concluded that "the totality of the evidence, including the claimant's subjective

statements, did not support any social limitations." (*Id.*).

L. Hoffman, Ph.D., the State agency psychological consultant, also opined that

Plaintiff had moderate limitations in his ability to interact with others, in addition to having

moderate limitations in understanding, remembering, and applying information and being

able to concentrate, persist, or maintain pace, and mild limitations in adapting or managing

oneself. (*Id.* at 84).    With respect to social interaction limitations, Dr. Hoffman explained,

"[Plaintiff's] ability to deal with co-workers and the public would be somewhat reduced, but adequate to handle brief and superficial contact. Similarly, the ability to tolerate and respond appropriately to supervision would be reduced, but adequate to handle ordinary levels of supervision in the customary work setting." (*Id.* at 89). The ALJ also found Dr. Hoffman's opinions to be persuasive. (*Id.* at 30-31). She found Dr. Hoffman's opinions to be supported by the narrative of the mental health record and consistent with the evidence of cognitive dysfunction experienced by Plaintiff. But "similar to Dr. Barlow's opinion, the evidence submitted at the hearing level does not support finding social limitations." (*Id.* at 31).

Amanda Slowik, Psy.D., completed a psychiatric evaluation on January 26, 2018. (*Id.* at 417-421). Dr. Slowik opined:

> [Plaintiff's] ability to understand, remember, and apply simple directions and instructions; interact adequately with supervisors, co-workers, and the public; sustain concentration; sustain an ordinary routine; regulate emotions; and be aware of normal hazards is moderately limited. [Plaintiff's] ability to understand, remember, and apply complex directions and instructions is markedly limited. [Plaintiff's] ability to use reason and judgment to make work-related decisions is moderately to markedly limited. [Plaintiff's] ability to maintain personal hygiene is not limited. Difficulties are caused by distractibility, cognitive deficits, and substance abuse.

(*Id.* at 420). The ALJ found Dr. Slowik's opinions to be partially persuasive. (*Id.* at 31). The ALJ found Dr. Slowik's provided limitations to be vague because she did not define moderate or marked in the context of the work functions assessed, limiting any usefulness of her opinion. The ALJ also found that Dr. Slowik's opinions were not consistent with the overall evidence of record, which did not document significant social deficits or an inability to maintain a routine. (*Id.*).

- 11 -

Finally, Plaintiff's primary care provider, Carl Charnetski, M.D., submitted multiple medical source statements.  (*Id.* at 643-44, 646-647).  Dr. Charnetski opined that Plaintiff had moderate limitations in concentration and an ability to understand, remember, and apply simple directions and instructions.  (*Id.*at 646).  He further opined that Plaintiff was moderately limited in responding appropriately to ordinary stressors in a work setting with simple tasks.  (*Id.*).  Dr. Charnetski opined that Plaintiff would be off task 16 to 20 percent of a normal workday and absent two workdays per month.  The ALJ found Dr. Charnetski's opinions partially persuasive.  The ALJ agreed with Dr. Charnetski that Plaintiff's "impairments do cause moderate limitations in concentration and dealing with stress," but concluded that Dr. Charnetski did not support his opinions with narrative discussion or otherwise find support in treatment notes that Plaintiff would be excessively off task or absent.  (*Id.* at 31).  The ALJ reasoned  that Plaintiff's treatment had been relatively conservative and that the evidence of record did not document recurrent symptom exacerbations requiring two absences a month or concentration limitations of up to 20% of a workday.  (*Id.*).

After reviewing the foregoing medical opinion evidence, the ALJ concluded, "the undersigned finds [Plaintiff] has the above [RFC] assessment, which is supported by the totality of the evidence of record.  The undersigned relies significantly on the opinions of Dr. Barlow and Dr. Hoffman in finding [Plaintiff] limited to simple, routine, and repetitive tasks in a low-stress environment.   Accounting for the claimant's headaches, in combination with his cognitive dysfunction, he must avoid hazards."  (*Id.*).

As noted, notwithstanding that the medical opinion evidence in the record concluding that Plaintiff possesses moderate limitations in the ability to interact with others and the ALJ finding the same at step three, the ALJ omitted any social limitations from the RFC.  The only explanation for this omission is the ALJ's citation to Plaintiff's hearing testimony and statement in connection with the assessment of Dr. Barlow and Dr. Hoffman's opinions, that "the totality of the evidence, including [Plaintiff's] subjective statements, did not support any social limitations."  (*Id.* at 30, 31).

While at the hearing, in response to the ALJ's question of whether he had "any problems with crowds, or people, or strangers," Plaintiff responded, "[n]ot really, I'm pretty cool about that," he then went on to discuss struggles he had had with coworkers in the past.  (*Id.* at 59).  Specifically, when asked if there were occasions when he thought other people were talking about him, he responded, "many times, many, many times."  (*Id.* at 63).  And when asked, "[i]n your jobs, has that ever resulted in you talking to coworkers, you know, in a bad way?" he responded, "[o]h yeah, many times, many times."  (*Id.*). Finally, when asked if that has contributed to him losing jobs, he responded, "[o]h yeah, oh, yeah."  (*Id.*).  Moreover, at the administrative hearing, the vocational expert testified that an individual with the confrontational episodes that Plaintiff testified to where he thinks someone is talking about him and confronts them at work "would be terminated immediately" and that "employers will not tolerate that kind of behavior on the jobsite." (*Id.* at 74-75).  When considering the hearing testimony on the whole, it is not clear from

the decision how the ALJ concluded it served as a basis to omit any social limitations from Plaintiff's RFC.

Further, this is not a case in which the ALJ had the discretion to make a common sense determination of Plaintiff's RFC.  It is true that that "under certain circumstances, particularly where the medical evidence shows relatively minor physical impairment, an ALJ permissibly can render a common sense judgment about functional capacity even without a physician's assessment[.]"  *Gross v. Astrue*, No. 12-CV-6207P, 2014 WL 1806779, at *18 (W.D.N.Y. May 7, 2014) (quotation and citation omitted).  However, "the leeway given to ALJs to make common sense judgments does not typically extend to the determination of mental limitations, which are by their very nature highly complex and individualized." *Lilley v. Berryhill*, 307 F. Supp. 3d 157, 161 (W.D.N.Y. 2018) (quotations omitted).  This is because "the effect a mental impairment has on one's ability to work is not the sort of inquiry susceptible to lay evaluation" and accordingly "[w]here serious mental illness is at issue, the ALJ may not make . . . seemingly common-sense judgments about a claimant's abilities." *Stoeckel v. Comm'r* of Soc. Sec., No. 18-CV-1475-FPG, 2019 WL 5445518, at *3 (W.D.N.Y. Oct. 24, 2019).   Indeed in the case of mental health impairments—which are at issue in this case—the opinions offered by treating providers are "all the more important," given those impairments are "not susceptible to clear records such as x-rays or MRIs," and "depend almost exclusively on less discretely measurable factors, like what the patient says in consultations." *Flynn v. Comm'r of Soc. Sec.*, 729 F. App'x 119, 122 (2d Cir. 2018).

Here, as noted, the ALJ found at step two that Plaintiff had multiple severe mental impairments and acknowledged at step three that Plaintiff's ability to interact with others was limited to a "moderate" extent.  All of the medical opinions in the record concurred with a moderate limitation, including the two which the ALJ deemed persuasive.  On this record, the ALJ was not permitted to rely on her own lay assessment of the medical evidence to assess Plaintiff's RFC and reject the opinion evidence of record, particularly without a more thorough explanation for the omission.  *Denise P. v. Kijakazi*, No. 20-CV-0468L, 2021 WL 3513836, at *2 (W.D.N.Y. Aug. 10, 2021) ("It is well-settled that moderate difficulties in social interaction, attention, concentration, and working at a consistent pace, are sufficiently accounted-for by limitations to unskilled, routine or repetitive work with no more than occasional social interactions.").  The ALJ's conclusory statement that Plaintiff's subjective statements did not support the social limitations indicated by the medical opinion evidence required more detail to allow the Court to understand the ALJ's reasoning.

Accordingly, remand is required on this basis.  On remand, the ALJ should discuss specifically the functional social limitations assessed by the opinion evidence and should the ALJ decline to adopt those limitations, she must provide a more thorough explanation for the failure to do so, including by citing to specific evidence in the record supporting the determination.

## B.    Plaintiff's Remaining Arguments

As set forth above, Plaintiff has identified additional reasons why he contends the ALJ's decision was not supported by substantial evidence.  However, because the Court

has already determined, for the reasons previously discussed, that remand of this matter for further administrative proceedings is necessary, the Court declines to reach these issues. *See, e.g., Bell v. Colvin*, No. 5:15-CV-01160 (LEK), 2016 WL 7017395, at *10 (N.D.N.Y. Dec. 1, 2016) (declining to reach arguments "devoted to the question whether substantial evidence supports various determinations made by [the] ALJ" where the court had already determined remand was warranted); *Morales v. Colvin*, No. 13cv06844 (LGS) (DF), 2015 WL 13774790, at *23 (S.D.N.Y. Feb. 10, 2015) (the court need not reach additional arguments regarding the ALJ's factual determinations "given that the ALJ's analysis may change on these points upon remand"), *adopted*, 2015 WL 2137776 (S.D.N.Y. May 4, 2015).

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (Dkt. 16) is granted to the extent that the matter is remanded for further administrative proceedings, and the Commissioner's motion for judgment on the pleadings (Dkt. 17) is denied.  The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated:  March 25, 2022
         Rochester, New York